Henry SEIDENECK et ux., Petitioners,

v.

**CAL BAYREUTHER ASSOCIATES et al.,**
Respondents.

No. B–1703.

Supreme Court of Texas.

March 4, 1970.

Rehearing Denied April 15, 1970.

Payne, Pace & Benners, Fred Benners, Dallas, for petitioners.

Thompson, Knight, Simmons & Bullion, John A. Gilliam and Timothy E. Kelley, Dallas, for respondents.

CALVERT, Chief Justice.

This suit was brought by Margaret Seideneck and husband, Henry Seideneck, against Cal Bayreuther Associates and Richard C. Seymour and Gloria Bayreuther, d/b/a Cal Bayreuther Associates, to recover damages for personal injuries suffered by Mrs. Seideneck when she fell and broke her right wrist at the defendants' place of business. When the plaintiffs rested their case, the trial court granted the defendants' motion for instructed verdict and rendered judgment that the plaintiffs take nothing. The court of civil appeals affirmed. 443 S.W.2d 75. We affirm.

Mrs. Seideneck pleaded that she was tripped by a hole or loop in the defendants' rug while she was a business invitee in the Cal Bayreuther Associates showroom at the Trade Mart in Dallas, where the defendants conducted their business as manufacturers' representatives and distributors of home decoration merchandise. She charges that the injury, for which she asks damages of $40,000, was proximately caused by the defendants' failure to make their showroom reasonably safe for business invitees such as herself; and she specifically charges a breach of the defendants' duty in (1) their use of a rug of inherently dangerous construction, (2) their dangerous placement of the rug, and (3) their failure to warn her of such dangers of construction and placement.

■ There is little conflict or contradiction in the evidence as it appears in the record. Since this is an instructed verdict case, however, we follow the rule that the evidence is to be considered in its most favorable light in support of the plaintiffs'

position. Anderson v. Moore, 448 S.W.2d 105 (Tex.Sup.1969); Triangle Motors of Dallas v. Richmond, 152 Tex. 354, 258 S.W.2d 60 (1953).

Mrs. Seideneck was in the defendants' showroom to purchase merchandise for her gift shop. She was interested in a small Christmas tree which was displayed, along with other items, on a table located in a corner of the room. The table rested upon the rug in question and there were several other throw-rugs in the display room; but the room had an otherwise smooth asphalt tile floor. Mrs. Seideneck's testimony shows that she "walked right up" to the table to check the price tag on the Christmas tree; that as she "stepped backwards" to "observe the item" her "heel got caught in the rug" and her body "went backwards"; that she looked around to see what it was she tripped on and she observed the rug.

The rug was not available to be exhibited at the trial, but its construction was described in the testimony of both Mrs. Seideneck and Mr. Seymour. Mr. Seymour testified that the rug was a wool, pile-type rug, approximately thirty-six inches in diameter; with a loose-weave, mesh-type fringe with tassels, with the loops on the fringe being approximately one inch in diameter. Mrs. Seideneck described the rug in this language: "Well, it seemed like they used a rug like that in early American where it had little loops in them, and also the fringe out there, * * *."

On the matter of the placement of the rug, the record indicates that most of it was under the table; that the rug itself was small, but it did extend out from under the table by six inches or a foot to some "two or three steps," depending upon whether Mr. Seymour's or Mrs. Seideneck's estimate, respectively, is used; and that there was nothing to call Mrs. Seideneck's attention to the presence of the rug.

■ Several elements of the plaintiff's required proofs in a landowner-invi-

tee case are readily apparent from a statement of the fundamental concept of such actions. The basic duty of a landowner or occupier to his invitees is to exercise ordinary care to keep the premises in a reasonably safe condition. Halepeska v. Callihan Interests, Inc., 371 S.W.2d 368, 378 (Tex. Sup. 1963); Robert E. McKee, General Contractor v. Patterson, 153 Tex. 517, 271 S.W.2d 391, 393 (1954); Carlisle v. J. Weingarten, Inc., 137 Tex. 200, 152 S.W.2d 1073, 1074 (1941); Walgreen-Texas Co. v. Shivers, 137 Tex. 493, 154 S.W.2d 625, 628–629 (1941); Renfro Drug Co. v. Lewis, 149 Tex. 507, 235 S.W.2d 609, 615, 23 A.L.R.2d 1114 (1951). Thus, the first steps in the proof of an injured invitee-plaintiff's case are to show (1) that the owner or occupier created or maintained on the premises some condition involving an unreasonable risk, of harm, *McKee*, 271 S.W.2d at 393; and (2) that the plaintiff's injury resulted from his contact with that condition. Additionally, because the owner or occupier is charged with knowledge of any dangerous condition that a reasonable inspection would have revealed, the plaintiff must show as a matter of law or through a finding of fact that the owner "knew or should have known of the existence of the condition and that he should have appreciated its dangers." 271 S.W.2d at 395.

Mrs. Seideneck's testimony that her heel "got caught in the rug," and that her body "went backwards," is some evidence that she tripped on the rug; and considered with the fact that the remainder of the floor nearby was covered with smooth asphalt tile which presented no obstacle to impede walking, it is enough that a jury could reasonably have inferred that the rug was the cause of the fall. However, even though there was a jury question raised on this one issue, a verdict was nevertheless properly instructed if there was no evidence that the condition and location of the rug created an unreasonable risk of harm.

A condition presenting an unreasonable risk of harm is defined as one in which there is a sufficient probability of a harmful event occurring that a reasonably prudent person would have foreseen it or some similar event as likely to happen. See 2 Harper and James, The Law of Torts 928 et seq. (1956); Prosser, Handbook of the Law of Torts 148 et seq. (1964); Restatement (Second) of Torts § 282, 283 (1965); Annot., 64 A.L.R.2d 335, 345 et seq. (1959); Annot., 61 A.L.R.2d 110, 122 et seq. (1958). It follows that an owner or occupier of land can be charged with knowledge and appreciation of a dangerous condition on his premises only if from a reasonable inspection a reasonably prudent person should have foreseen a probability that the condition would result in injury to another. See Restatement (Second) of Torts § 343(a) (1965).

As might be expected with a matter involving the "reasonable man" concept, there seems to be no definitive, objective test which may be applied to determine whether a condition presents an unreasonable risk of harm. Obviously, evidence of other falls attributable to the same condition, or evidence of defectiveness of the rug, floor, or other condition causing the fall would be probative, although not conclusive, on the question. See generally, Annot., 64 A.L.R.2d 335, 345 et seq. (1959); and Annot., 61 A.L.R.2d 110, 122 et seq. (1958).

There is no evidence in this record that during the time the rug had been on the floor anyone had previously tripped on it. There was neither an allegation nor is there evidence that the rug was defective in any manner. There is no evidence that this type of rug, with "regular pile" and a decorative fringe of loose weave and tassels, was unusual; or that its particular construction and placement would have served as a suggestion or warning to the defendants that it presented the prohibited degree of danger, even if they had attempted a formal survey of the shop for

dangerous conditions. See Mize v. Lavender, 407 S.W.2d 856 (Tex.Civ.App.—Eastland 1966, writ. ref'd n.r.e.); and Medallion Stores, Inc. v. Eidt, 405 S.W.2d 417 (Tex.Civ.App.—Texarkana 1966, writ ref'd n.r.e.).

■ In this case, as often happens, the question of whether there is more than a scintilla of evidence to support the finding of a vital fact is close. There is, perhaps, a glimmer of evidence to support the plaintiffs' position that the rug presented an unreasonable risk of harm and that such danger should have been known to and appreciated by the defendants. But we think, and so hold, that the evidence as it appears in the record of this case falls within the scope of the rule announced in Joske v. Irvine, 91 Tex. 574, 44 S.W. 1059 (1898), to the effect that when the evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence, such evidence is in legal effect no evidence, and it will not support a verdict or judgment. See Calvert, "No Evidence" and "Insufficient Evidence" Points of Error, 38 Texas L.Rev. 361 (1960).

The Seidenecks' first point of error, charging that the court of civil appeals erred in holding that there was no evidence to show liability of the defendants, is therefore overruled.

Their second point of error complains of the exclusion of testimony designed to show that rugs similar to the one upon which Mrs. Seideneck allegedly tripped were not used in other showrooms in the Trade Mart. There is no argument presented in the petitioners' brief on this point. We overrule it because such evidence, even if admitted, would not have been probative of any material fact in issue in this case.

Accordingly, the judgment of the court of civil appeals is affirmed.

SMITH and REAVLEY, JJ., dissent.

SMITH, Justice (dissenting).

I respectfully dissent. The trial court, the Court of Civil Appeals and this Court have denied a trial by jury of the issues drawn by the pleadings and the evidence. The plaintiffs' pleadings present issues of negligence in that it is alleged that Mrs. Seideneck went to defendants' showroom as a business invitee and while shopping in the defendants' place of business, she was tripped by a rug with woven holes and that this dangerous rug with holes therein was the proximate cause of the injuries sustained. Plaintiffs specifically alleged that the injuries and resulting damages were "proximately caused by defendants' failure to make defendants' showroom reasonably safe for business invitees such as plaintiff, Margaret Seideneck. Defendants failed to use the legally required degree of care in the following particulars: (1) Use by defendants of an inherently dangerously constructed rug; (2) Defendants' dangerous placement of said rug; (3) Defendants' failure to warn plaintiff of the dangerous rug and its dangerous placement. Plaintiff, Margaret Seideneck, exercised due care for her own safety under the circumstances at the time in question, but nevertheless was unaware of the dangerous condition described above, which caused her injury and resulting damages."

The defendants answered with a general denial and a plea that Mrs. Seideneck was herself guilty of acts of negligence which were a proximate cause of her injuries in the following particulars: "(a) She failed to keep a proper lookout; (b) She stepped backwards without looking. Each of the above acts of omission and commission were negligent and either singly or collectively were a proximate cause of plaintiffs' damages."

I accept the law in Halepeska v. Callihan Interests, Inc., 371 S.W.2d 368, 378 (Tex.Sup.1963) and Robert E. McKee,

General Contractor v. Patterson, 153 Tex. 517, 271 S.W.2d 391, 393 (1954) but it is my position that those cases are not controlling here. A jury would be warranted in finding that the defendants knew of the condition they had deliberately created and a reasonably prudent person should have known that placing a rug with woven holes about one inch in diameter around its outer edge under a display table would probably result in the type of accident as described in this case. The defendants were in a position to know the condition of the rug. The injured plaintiff was not. There is nothing in this record to cause the invitee to realize that the asphalt tile floor which she had traversed from the point of entrance would suddenly change to a dangerously looped rug which when a person moving around the table to view the articles thereon would be caused to fall as a result of the heel of her shoe catching in one of the woven loops. The defendants say in their pleadings that the injured plaintiff stepped backward without looking. It is my view that an inference could be properly drawn that Mrs. Seideneck was standing with her side next to the table when she stepped backwards. The evidence most favorable to the plaintiffs' version as to how the fall and subsequent injuries occurred shows and the jury, if allowed, could have found that Mrs. Seideneck entered the defendants' showroom, approached the table in the corner of the room and that as she was viewing the articles thereon, the heel of her shoe hung in one of those holes, then in stepping backward, the rug being held stationary by the table, she was thrown to the floor. To say the least, Mrs. Seideneck had the right to assume that the premises were safe for her use. Blanks v. Southland Hotel, Inc., 149 Tex. 139, 229 S.W.2d 357, 360 (1950). Mrs. Seideneck was not under a duty to inspect the premises surrounding the table under all the surrounding circumstances. Should she be compelled to look under the table, discover the woven holes about the size of a shoe heel in the rug, and then inform the defendants that she would not view the Christmas tree and other articles on the table until the dangerous condition which they had created was removed? It was the duty of the defendants to keep their premises in a reasonably safe condition for use by their invitees.

The rule was declared in J. Weingarten, Inc. v. Brockman, 135 S.W.2d 698 (Tex. Comm.1940), wherein the Court said:

"The issue of whether or not given acts constitute negligence is essentially a jury question. The facts of each case must be given independent consideration, and seldom are the facts of any two cases so identical as that the decision in one could be held to be authority for a like decision in the other. Examining the facts in the case before us, we are of the opinion that an issue is presented on the negligence of plaintiff in error in failing to maintain the premises in a reasonably safe condition. Jurors might conclude that the slight offset on the wide concrete area was deceptive and dangerous. The record does not disclose why such a slight offset should have been maintained or what purpose it served. Plaintiff in error invited the public, including Mrs. Brockman, to come through the north entrance of this store, thereby impliedly representing that it was safe for them to do so. If it was unsafe, the jury might have concluded that plaintiff in error should have made it safe, or, if that could not be done practically, should have discontinued the use of that entrance altogether. We cannot hold that this slight offset was so obvious as to exonerate plaintiff in error of all negligence as a matter of law."

I respectfully submit that in determining whether or not the trial court properly granted an instructed verdict, the rule should be invoked which requires the appellate courts to view only the evidence (and all reasonable inferences to be drawn therefrom) most favorable to plaintiffs cause of action and discard all contrary evidence and inferences. See Triangle

Motors v. Richmond, 152 Tex. 354, 258 S. W.2d 60 (1953); White v. White, 141 Tex. 328, 172 S.W.2d 295 (1943).

The judgments of the courts below should be reversed and the cause remanded to the trial court for a new trial on its merits.

REAVLEY, J., joins in this dissent.