

# NUMBER 13-22-00129-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

ESMERALDA DODSON,          **Appellant,**

**v.**

WATERMARK AT TIMBERGATE B, LLC
AND THOMPSON THRIFT DEVELOPMENT, INC.,
D/B/A WATERMARK RESIDENTIAL          **Appellees.**

---

### On appeal from the County Court at Law No. 3
### of Nueces County, Texas.

---

# MEMORANDUM OPINION

### Before Chief Justice Contreras and Justices Benavides and Tijerina
### Memorandum Opinion by Chief Justice Contreras

By two issues, appellant Esmeralda Dodson appeals the trial court's granting of

summary judgment in favor of appellees Watermark at Timbergate B, LLC and Thompson

Thrift Development, Inc., d/b/a Watermark Residential (collectively, Watermark) in this

premises liability case. We affirm.

## I. BACKGROUND

The Retreat by Watermark is an apartment complex in Corpus Christi owned and operated by Watermark. On July 9, 2020, Dodson arrived and parked her vehicle at the complex to visit a friend, who was a resident. As Dodson strode from the parking lot onto the sidewalk, she raised her foot, allegedly "tripped . . . on a crack in the sidewalk curb," and fell to the ground; injuries resulted. Dodson detailed in deposition testimony that she was wearing sandals at the time of the incident and, as she stepped up to the sidewalk from the parking lot, the crack in the side of the curb "caught [her] shoe" and she "just went flying."

In January 2021, Dodson sued Watermark alleging that the crack "constituted a dangerous condition that posed an unreasonable risk of harm to [her] because it made the surface uneven and created a tripping hazard" and that "Watermark's failure to exercise reasonable care directly and proximately caused [her] damages."

Watermark generally denied Dodson's claims and pleaded that the condition of the sidewalk "was not dangerous" and "was open and obvious." In December 2021, Watermark filed its motion for summary judgment on those grounds, which the trial court granted on March 1, 2022. Dodson then filed this appeal.

## II. STANDARD OF REVIEW & APPLICABLE LAW

We review a trial court's order granting summary judgment de novo. *Eagle Oil & Gas Co. v. TRO-X, L.P.*, 619 S.W.3d 699, 705 (Tex. 2021). We take as true all evidence favorable to the nonmovant and indulge every reasonable inference and resolve any

2

doubts in the nonmovant's favor. *Bush v. Lone Oak Club, LLC*, 601 S.W.3d 639, 646 (Tex. 2020). To be entitled to traditional summary judgment, a movant must establish there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Painter v. Amerimex Drilling I, Ltd.*, 561 S.W.3d 125, 130 (Tex. 2018). Because the trial court's order does not specify the grounds for its summary judgment, we must affirm the summary judgment if any of the theories presented to the trial court and preserved for appellate review are meritorious. *W. Invs., Inc. v. Urena*, 162 S.W.3d 547, 550 (Tex. 2005).

> To prevail in a premises liability case, a plaintiff must prove that:
>
> (1) the owner had actual or constructive knowledge of the condition at issue; (2) the condition was unreasonably dangerous; (3) the owner did not exercise reasonable care to reduce or eliminate the unreasonable risk of harm; and (4) the owner's failure to reduce or eliminate the unreasonable risk of harm proximately caused the plaintiff's injuries.

*United Supermarkets, LLC v. McIntire*, 646 S.W.3d 800, 802 n.4 (Tex. 2022) (per curiam); *see Del Lago Partners, Inc. v. Smith*, 307 S.W.3d 762, 767 (Tex. 2010) ("In a premises-liability case, the plaintiff must establish a duty owed to the plaintiff, breach of the duty, and damages proximately caused by the breach."). "A landowner is not an insurer of a visitor's safety." *Austin v. Kroger Tex., L.P.*, 465 S.W.3d 193, 203 (Tex. 2015) (cleaned up). Instead, a landowner owes an invitee "a duty to 'make safe or warn against any concealed, unreasonably dangerous conditions of which [it was], or reasonably should [have been], aware' but which [the invitee] was not." *United Supermarkets, LLC*, 646 S.W.3d at 802 (quoting *United Scaffolding, Inc. v. Levine*, 537 S.W.3d 463, 474 (Tex. 2017)). A condition is "unreasonably dangerous" if "there is a sufficient probability of a harmful event occurring that a reasonably prudent person would have foreseen it or some

3

similar event as likely to happen." *Seideneck v. Cal Bayreuther Assocs.*, 451 S.W.2d 752, 754 (Tex. 1970).

The duty to warn is imposed on landowners because "the landowner is typically in a better position than the invitee to be aware of hidden hazards on the premises," and should thus take precautions to ensure the safety of invitees against those hazards, "to the extent the landowner is or should be aware of them." *Austin*, 465 S.W.3d at 203. When a dangerous condition is "open and obvious," however, "the landowner is not in a better position to discover it." *Id.* In such a situation, the purported dangerous "condition will, in most cases, no longer pose an unreasonable risk because the law presumes that invitees will take reasonable measures to protect themselves against known risks." *Id.* Accordingly, "a landowner generally has no duty to warn of hazards that are open and obvious or known to the invitee." *Id.* at 204.

Whether a dangerous condition "is open and obvious is a question of law determined under an objective test." *Los Compadres Pescadores, L.L.C. v. Valdez*, 622 S.W.3d 771, 788 (Tex. 2021). "Under the objective standard, the question is not what the plaintiff subjectively or actually knew but what a reasonably prudent person would have known under similar circumstances." *Id.* "To properly apply an objective test, we must consider the 'totality of' the 'particular' circumstances the plaintiff faced." *Id.* at 788–89 (quoting *State v. One (1) 2004 Lincoln Navigator*, 494 S.W.3d 690, 706 (Tex. 2016)).

## III.   DISCUSSION

Dodson contends that the trial court erred "in granting summary judgment because there was a genuine issue of material fact as to whether the crack in the sidewalk curb

was" (1) unreasonably dangerous and (2) open and obvious. In its motion for summary judgment, Watermark contended that the curb crack was not unreasonably dangerous and was open and obvious. Watermark included excerpts of Dodson's deposition testimony in which she stated that: (1) at the time of the incident, she saw that there was a curb separating the parking lot surface and the sidewalk; (2) she did not see the curb crack and was not looking for cracks at the time of the accident; and (3) upon seeing a picture of the relevant curb at her deposition, there was nothing covering the crack and the crack was clearly visible. Watermark also included portions of deposition testimony by Watermark's property manager, Sarah Osuch, in which Osuch testified that the curb crack was "open and obvious." Watermark attached to its motion multiple pictures of the curb crack, including the following:



In her response to Watermark's motion for summary judgment, Dodson argued that the curb crack was unreasonably dangerous because "it was jagged and thus created a tripping hazard." Dodson argued that the curb crack was not open and obvious because it: (1) "was on the expansion joint seam" of the parking lot surface; (2) "was obscured by

5

a previous attempted repair, making the crack difficult to see"; (3) "was on the curb of the sidewalk rather than on the flat surface onto which [Dodson] was attempting to step"; and (4) "was difficult to see because of its proximity to [Dodson]'s parked vehicle, which cast a shadow in the direction of the crack." Dodson also inserted and attached to her response the same pictures of the scene of the accident, which were taken soon after her fall.

Even indulging every reasonable inference in favor of Dodson, and even assuming, without deciding, that the curb crack constituted an unreasonably dangerous condition, we cannot conclude that the record supports the contention that the curb crack was concealed. The evidence is undisputed that the crack is located on the sidewalk curb and that Dodson saw the curb while stepping up from the parking lot onto the sidewalk. The photographs above evidence a previous attempted repair of the curb crack—given the two shades of gray on the curb—and a shadow cast by Dodson's truck in the direction of the crack, but that neither conceal the curb crack. And there is no testimony or evidence in the record that either the repair or shadow actually *covered* the crack at the time of the accident. Dodson also argues that the crack was hard to see because it was located at the end of an expansion joint that separated the concrete slabs on the parking lot surface. But neither the testimony nor photographs in the record indicate how the expansion joint seam—or anything else—purportedly concealed the curb crack. In fact, when asked at her deposition what she believed the curb crack was "hidden with" at the time of the accident, Dodson responded, "I don't know."

The record instead supports the conclusion that the curb crack was objectively

6

observable to a person exercising reasonable care in walking from the parking lot onto the sidewalk. *Los Compadres Pescadores, L.L.C.*, 622 S.W.3d at 788; *Austin*, 465 S.W.3d at 203; *cf. United Supermarkets, LLC*, 646 S.W.3d at 801, 803 (in the context of analyzing the issue of unreasonable danger, holding that "an approximately 3/4-inch [deep and 3.5-inch wide] divot in a grocery store parking lot" was "not unreasonably dangerous as a matter of law" because "reasonable invitees know that parking lots are not perfectly flat and even, and they use caution when exiting their vehicles"). We thus conclude that the curb crack in question was an open and obvious condition. *See 4Front Engineered Sols., Inc. v. Rosales*, 505 S.W.3d 905, 912 (Tex. 2016) (rendering judgment for premises owner because, even if considered an unreasonably dangerous condition, sidewalk's edge in front of warehouse's entrance was open and obvious); *Austin*, 465 S.W.3d at 204; *Corpus v. K-J Oil Co.*, 720 S.W.2d 672, 674 (Tex. App.—Austin 1986, writ ref'd n.r.e.) (affirming summary judgment in favor of premises owner because photographs proved an overhead power line, which shocked a crewman, "plainly was not a hidden danger on the premises," and the fact that the crewmen were not paying attention to the power line when making incidental contact with it "did not change the presence of the [power line] from a reasonably apparent condition into a dangerous condition about which the occupier of the premises had a duty to warn."); *see also Corona v. Andy's Car Wash, Inc.*, No. 04-21-00324-CV, 2022 WL 2230945, at *3 (Tex. App.—San Antonio June 22, 2022, no pet.) (mem. op.) (drain in a carwash into which plaintiff fell was open and obvious even though there were "no warning signs or pylons posted" near the drain and plaintiff testified she did not see the drain); *Culotta v. DoubleTree*

*Hotels LLC*, No. 01-18-00267-CV, 2019 WL 2588103, at *4 (Tex. App.—Houston [1st Dist.] June 25, 2019, pet. denied) (mem. op.) (concluding that masonry enclosing lowest tier of a fountain pool in hotel restaurant was "objectively observable to a reasonable person exercising ordinary care in traversing the restaurant" and thus an open and obvious condition).

In so holding, we make no broad pronouncements on whether pavement cracks generally constitute open and obvious conditions. But because the facts in this particular case reflect that the sidewalk curb crack is an open and obvious condition on Watermark's premises, Watermark had no duty to warn Dodson of its presence as a matter of law.[1] *See Valdez*, 622 S.W.3d at 788–89 (noting under the objective standard "[w]e must consider the 'totality of' the 'particular' circumstances the plaintiff faced"); *Austin*, 465 S.W.3d at 204. The trial court thus did not err by rendering summary judgment in favor of Watermark. *See* TEX. R. CIV. P. 166a(c); *Del Lago Partners, Inc.*, 307 S.W.3d at 767.

We overrule Dodson's issues.

**IV. CONCLUSION**

We affirm the trial court's judgment.

DORI CONTRERAS
Chief Justice

Delivered and filed on the
12th day of January, 2023.

---

[1] Dodson cites *Los Compadres Pescadores, L.L.C. v. Valdez*, 622 S.W.3d 771, 788 (Tex. 2021), for the proposition that "[a] premises owner or occupier's duty [to make safe or warn against unreasonably dangerous conditions] is not abrogated . . . simply because the condition is obvious; the danger must be obvious as well." In that case, the supreme court held that the presence of electric wires was obvious to foundation repair workmen but the fact that the wires were electrified at the time was not, as testimony in the record indicated that the wires were supposed to be "de-energized" at the time. *Id.* at 789. Here, there is no similar latent danger; the crack in the curb itself represents the purported danger.