

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-20-00081-CV
_____


BARROW SHAVER RESOURCES COMPANY LLC, KATHRYN M. DAWSON,
AND MICHAEL RAY HILL, Appellants

V.

NETX ACQUISITIONS, LLC, AND THOMAS C. MERRITT, TRUSTEE, Appellees



On Appeal from the 5th District Court
Cass County, Texas
Trial Court No. 19C090



Before Morriss, C.J., Burgess and Stevens, JJ.
Memorandum Opinion by Justice Burgess

MEMORANDUM OPINION

In this appeal we are asked to determine the ownership of the mineral estate of a 181-acre tract of land in Cass County. In order to do so, we must determine what portion of the mineral estate was conveyed in a 1963 warranty deed from Jamie T. Dawson and James E. Hill to John L. and Treba Juanita Stone (the Stone Deed).[1] The trial court determined that the Stone Deed conveyed all of the mineral estate to the Stones, granted the motion for summary judgment of NETX Acquisitions, LLC (NETX), and Thomas C. Merritt, trustee (Merritt), and denied the cross-motion for summary judgment of Barrow Shaver Resources Company, LLC (Barrow), Kathryn M. Dawson (Dawson), and Michael Ray Hill (Hill) (collectively the Dawson Parties). We reverse the judgment of the trial court and enter judgment in favor of the Dawson Parties.[2]

I.      Introduction

In this trespass-to-try-title action, the parties agree that the common source of title for their interests is a 1954 warranty deed conveying the 181-acre tract from E.M. Young and his wife, Effie Young, grantors, to James E. Hill and Jamie T. Dawson. In 1963, James E. Hill and Jamie T. Dawson conveyed the 181-acre tract to the Stones by the Stone Deed. The Stone Deed provided:

Jamie T. Dawson and James E. Hill . . . .

---

[1] The Stone Deed describes that tract as 181 acres. However, when the Stones conveyed the tract to Merritt, it was described as 183.12 acres. We will refer to the tract as the 181-acre tract.

[2] As explained below, our decision in this case is guided by the Texas Supreme Court's opinion in *Piranha Partners v. Nehuoff*, 596 S.W.3d 740, 744 (Tex. 2020). We note that the Texas Supreme Court issued that opinion three months after the trial court rendered judgment in this case, which was after the trial court's plenary jurisdiction had expired. Accordingly, the trial court did not have the benefit of that opinion in making its ruling that is the subject of this appeal.

do Grant, Sell and Convey, unto . . . [the Stones] . . . . all that certain

181 acres of land . . . . in Cass County Texas, and being more particularly described as follows:  [metes and bounds description]

This conveyance is made subject to any and all easements and reservations of record.

There is likewise conveyed to Grantees by this conveyance one-eighth (1/8) of all Oil, Gas, and Other Minerals.

This conveyance is made subject to the terms of an outstanding Oil, Gas and Mineral Lease executed by Grantors to M. H. Meeks dated August 25, 1958, and recorded in Volume 360, Page 302 of the Deed Records of Cass County, Texas.

TO HAVE AND TO HOLD the above described premises, together with all and singular the right and appurtenances thereto to anywise belonging unto. . . . [the Stones], their heirs and assigns forever and we . . . . Warrant and Forever Defend, all and singular the said premises unto . . . [the Stones] . . . .

The question in this case is whether—via the Stone Deed—James E. Hill and Jamie T. Dawson conveyed 1/8th of the mineral interests in the 181-acre tract to the Stones or whether they conveyed 100% of the minerals to the Stones and attempted to reserve 7/8ths of the mineral interests in themselves.  Merritt and NETX argue that the second interpretation is correct and that the attempted reservation was invalid.  Accordingly, Merritt and NETX conclude that the Stones acquired and retained 100% of the mineral interests in the 181-acre tract via the Stone Deed. Dawson, Hill, and Barrow (the Dawson Parties) argue that the first interpretation is correct and that the Stones never acquired more than 1/8ths of the mineral interests in the 181-acre tract.  For the reasons stated below, we agree with the Dawson Parties' interpretation and find that the Stone Deed only conveyed 1/8th of the mineral interests in the 181-acre tract to the Stones.

3

## II. Background Facts

It is undisputed that, prior to the Stone Deed, James E. Hill and Jamie T. Dawson owned the surface estate and all the mineral interest in the 181-acre tract. The parties also agree that the Stones conveyed their interest in the 181-acre tract to Merritt in 1984, that Merritt executed an oil and gas lease on that tract to NETX, and that NETX is the Lessee under that oil and gas lease. There is also no dispute that Merritt owns the surface estate of the 181-acre tract.

It is also undisputed that Dawson is the sole successor-in-interest of Jamie T. Dawson's interest, if any, in the 181-acre tract and that Hill is the sole successor-in-interest of James E. Hill's interest, if any, in the 181-acre tract. It is further undisputed that Dawson and Hill executed an oil and gas lease to Barrow on the same mineral rights to the 181-acre tract of land that Merritt leased to NETX and that Barrow is the Lessee under that oil and gas lease. Therefore, the dispute in this case arises out of the fact that Merritt leased oil and gas in the 181-acre tract to NETX, whereas Dawson and Hill leased the oil and gas in the same 181-acre tract to Barrow.

After Dawson and Hill executed oil and gas leases with Barrow that purported to lease the oil, gas, and minerals under the 181-acre tract, Merritt and NETX filed this trespass-to-try-title action, in which Merritt asserted he was the owner in fee simple of the surface and mineral estates of the tract and NETX asserted it was the owner of the fee simple determinable of the mineral estate of the tract. Merritt and NETX filed a traditional motion for summary judgment and contended that the Stone Deed was unambiguous and that, under the controlling principles of real property law, it should be construed as having conveyed the entire mineral estate to the

4

Stones.  The Dawson Parties filed a cross-motion for summary judgment and contended that the deed was unambiguous and that, when the entire deed is considered and all its provisions are given effect and harmonized, the clear intent of the deed was to convey only a one-eighth interest in the mineral estate to the Stones.  The trial court agreed with Merritt and NETX, applied certain principles of real property law, granted their motion for summary judgment, and denied the Dawson Parties' cross-motion.[3]

## III.     Standard of Review

"The grant of a trial court's summary judgment is subject to de novo review by appellate courts."  *Brown v. CitiMortgage, Inc.*, No. 06-14-00105-CV, 2015 WL 2437519, at *2 (Tex. App.—Texarkana May 22, 2015, no pet.) (mem. op.) (citing *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003)).  When, as here, the trial court resolved the case on the parties' cross-motions for summary judgment, "we consider both motions and render the judgment that the trial court should have rendered."  *Perryman v. Spartan Tex. Six Capital Partners, Ltd.*, 546 S.W.3d 110, 116 (Tex. 2018) (citing *Coastal Liquids Transp., L.P. v. Harris Cty. Appraisal Dist.*, 46 S.W.3d 880, 884 (Tex. 2001) (citing *Comm'rs Ct. v. Agan*, 940 S.W.2d 77, 81 (Tex. 1997))).  "Each party bears the burden of establishing that it is entitled to judgment as a matter of law."  *Id.* at 116–17 (citing *City of Garland v. Dallas Morning News*, 22 S.W.3d 351, 356 (Tex. 2000)).

---

[3]Although Merritt and NETX also asserted a no-evidence motion for summary judgment, it is clear from the trial court's judgment that it based its ruling solely on the basis asserted in Merritt's and NETX's traditional motion for summary judgment.

## IV. Disposition

### A. Introduction and Applicable Law

"The construction of an unambiguous deed is a question of law for the court." *Wenske v. Ealy*, 521 S.W.3d 791, 794 (Tex. 2017) (quoting *Luckel v. White*, 819 S.W.2d 459, 461 (Tex. 1991)). "When construing an unambiguous deed, our primary duty is to ascertain the intent of the parties from all of the language within the four corners of the deed." *Id.* (citing *Luckel*, 819 S.W.2d at 461). "The parties' intent, 'when ascertained, prevails over arbitrary rules.'" *Id.* (quoting *Luckel*, 819 S.W.2d at 462 (quoting *Harris v. Windsor*, 294 S.W.2d 798, 800 (Tex. 1956))). The Texas Supreme Court has "rejected mechanical rules of construction, such as giving priority to certain clauses over others, or requiring the use of so-called 'magic words.'" *Id.* (citing *Concord Oil Co. v. Pennzoil Expl. & Prod. Co.*, 966 S.W.2d 451, 465 (Tex. 1998) (citing *Luckel*, 819 S.W.2d at 462)). Rather, courts "must strive to harmonize all of the parts [of the deed], construing the instrument to give effect to all of its provisions." *Luckel v. White*, 819 S.W.2d 459, 462 (Tex. 1991) (citing *Benge v. Scharbauer*, 259 S.W.2d 166, 167 (Tex. 1953)). Consequently, "we consider the entire agreement and, to the extent possible, resolve any conflicts by harmonizing the agreement's provisions, rather than by applying arbitrary or mechanical default rules." *Piranha Partners*, 596 S.W.3d at 744 (citing *Wenske*, 521 S.W.3d at 792, 796). In determining the document's meaning, "we look not for the parties' actual intent but for their intent as expressed in the written document." *Id.* (citing *Luckel*, 819 S.W.2d at 461–62).

In this case, the parties in their cross-motions for summary judgment and responses thereto, agreed that the Stone Deed was not ambiguous, and the trial court agreed with that position.[4] We also agree.[5] Consequently, our task is to "ascertain the parties' intent as expressed in the language of the deed." *Wenske*, 521 S.W.3d at 794.

## B.     Analysis

### 1.     Rules of Construction

In their brief, Merritt and NETX contend that four principles of real property law apply to the interpretation of the Stone Deed:  (1) "a warranty deed will pass all of the estate owned by the grantor at the time of the conveyance unless there are reservations or exceptions which reduce the estate conveyed," *Cockrell v. Texas Gulf Sulphur Co.*, 299 S.W.2d 672, 675 (Tex. 1956) (citing *Harris v. Currie*, 176 S.W.2d 302, 304 (Tex. 1943)); (2) "[r]eservations must be made by 'clear language,' and courts do not favor reservations by implication," *Combest v. Mustang Minerals, LLC*, 502 S.W.3d 173, 179–80 (Tex. App.—San Antonio 2016, pet. denied) (quoting *Graham v. Prochaska*, 429 S.W.3d 650, 655 (Tex. App.—San Antonio 2013, pet. denied) (citations omitted)); (3) words in a deed that are of a doubtful meaning are construed against the grantor, *Reeves v. Towery*, 621 S.W.2d 209, 212 (Tex. App.—Corpus Christi 1981, writ ref'd n.r.e.) (citing *Jones v. Sun Oil Co.*, 110 S.W.2d 80 (Tex. App.—Texarkana 1937, writ

[4]On appeal, the Dawson Parties argue in the alternative that the trial court's judgment should be reversed because the Stone Deed was ambiguous.  However, "[a]ny issues a nonmovant contends avoid the movant's entitlement to summary judgment must be expressly presented by written answer to the motion or by other written response to the motion.  Such issues are not expressly presented by mere reference to summary judgment evidence." *Hyde v. Hoerauf*, 337 S.W.3d 431, 435 n.9 (Tex. App.—Texarkana 2011, no pet.) (citing *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 341 (Tex. 1993)).  "Issues not expressly presented to the trial court in writing shall not be considered on appeal as grounds for reversal." *Id.* (citing TEX. R. CIV. P. 166a(c)).

[5]*See Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996) (explaining that ambiguity is a question of law for the court and that courts will enforce an unambiguous document as written).

ref'd)); and (4) a deed is construed "to confer upon a grantee the greatest estate that the terms of the instrument will permit," *Johnson v. Conner*, 260 S.W.3d 575, 579 (Tex. App.—Tyler 2008, no pet.) (citing *Lott v. Lott*, 370 S.W.2d 463, 465 (Tex. 1963)).

The Texas Supreme Court, however, has directed Texas courts to "consider the entire agreement and, to the extent possible, resolve any conflicts by harmonizing the agreement's provisions, rather than by applying arbitrary or mechanical default rules." *Piranha Partners*, 596 S.W.3d at 744. At the same time, the court has acknowledged that it has "not yet endeavored to clearly distinguish between the 'arbitrary,' 'mechanical,' 'default' rules we have 'cast off' and the 'well-settled contract-construction principles' on which we continue to rely when construing deeds and other contracts." *Id.* at 747. Nevertheless, the court shed light on the proper application of the principles urged by Merritt and NETX.

Like this case, *Piranha Partners* involved the interpretation of an assignment of interests in real property that conveyed certain interests owned by Neuhoff but did not contain any language attempting to reserve or except anything from those interests. *Id.* at 748. The assignment recited that it conveyed "all of [Neuhoff's] right, title and interest in and to the properties described in Exhibit 'A.'" *Id.* at 744. Exhibit A identified both a producing well that was located on the NW/4 of Section 28 and an oil and gas lease that covered all of Section 28. *Id.* at 744–45. The issue to be determined by the court was whether Neuhoff had only conveyed its interest (an overriding royalty) from production in the NW/4 of Section 28, or whether it had conveyed its overriding royalty interest from production in all of Section 28. *Id.* at 743.

Like Merritt and NETX, Piranha asserted that the court must construe the assignment using certain rules that the court had expressed in some of its prior opinions. *Id.* at 746. One of the rules that Piranha asserted, as clarified by the court, was that "any 'reservation' must be 'by clear language' and cannot be implied, and a reservation is a form of 'exception' through which the grantor excludes for itself a portion of that which would otherwise fall within the deed's description of the interest granted." *Id.* at 748 (citing *Perryman*, 546 S.W.3d at 119; *Sharp v. Fowler*, 252 S.W.2d 153, 154 (Tex. 1952)). The court noted, "This rule does not address language that describes the interest granted, but language that excludes from the grant a portion of the interest described." *Id.* The court went on the point out that "[a] grantor may withhold for itself a part of its estate *either* by granting the entire estate but reserving the portion it desires to retain *or* by granting only the portion it desires to convey." *Id.* (citing *Harris*, 176 S.W.2d at 304–05). Since the assignment did not contain any language attempting to reserve or except anything from the interest granted, the court held that "rules governing the construction of exceptions or reservations could not apply." *Id.*

As Merritt and NETX acknowledge in their brief, the Stone Deed contained no reservation of oil, gas, and other minerals. Consequently, the first two principles that govern construction of reservations and exceptions upon which they rely do not apply in this case. Rather, "[w]e must determine the interest [the grantors in the Stone Deed] granted, not the interest [they] excepted or reserved." *Id.* at 748–49.

Also, like Merritt and NETX, Piranha "relie[d] on the rule that 'should there be any doubt as to the proper construction of the deed, that doubt should be resolved against the grantors,

9

whose language it is.'"  *Id.* at 749 (quoting *Garrett v. Dils Co.*, 299 S.W.2d 904, 906 (Tex. 1957)).  However, as the court pointed out, "[t]his rule applies . . . only when our 'doubt' about the document's meaning renders the language ambiguous."  *Id.* (citing *Lopez v. Munoz, Hockema & Reed, L.L.P.*, 22 S.W.3d 857, 860 (Tex. 2000)).  Consequently, this rule is inapplicable "when construing an unambiguous instrument."  *Id.*[6]

Regarding the final rule that Merritt and NETX rely upon, the court pointed out that courts will "constru[e] a deed to convey not the greatest estate possible, but the greatest estate 'permissible under its language.'"  *Id.* at 747 (quoting *Garrett*, 299 S.W.2d at 906).  Although this rule is applicable in this case, it requires us to examine all of the deed's provisions, without giving preference to any particular clause, to determine the interests conveyed.  *See id.* at 747–48.

Section 5.001 of the Texas Property Code provides, "An estate in land that is conveyed or devised is a fee simple *unless the estate is limited by express words* or *unless a lesser estate is conveyed* or devised by construction or operation of law."  TEX. PROP. CODE ANN. § 5.001(a) (emphasis added).  This is consistent with the Texas Supreme Court's direction that we are to construe a deed to convey the greatest estate permissible under the language of the deed.  It is also consistent with the court's holding that "[a] grantor may withhold for itself a part of its estate *either* by granting the entire estate but reserving the portion it desires to retain (i.e., by

<hr />

[6]In its summary judgment the trial court relied on the same principles that Merritt and NETX rely on in this Court. However, we note again that the trial court issued its summary judgment three months before the *Piranha Partners* opinion was delivered.

10

limiting the estate by express words) *or* by granting only the portion it desires to convey (i.e., by conveying a lesser estate)." *Piranha Partners*, 596 S.W.3d at 748.

In this deed, the granting clause initially described the property being conveyed by metes and bounds description and then stated that it was "likewise" conveying one-eighth of all oil, gas, and minerals. By expressly stating that they were "likewise" conveying a one-eighth of the mineral estate, the grantors indicated their intent to convey something less than the fee simple estate in the initial portion of the granting clause. Construing the initial property description together with the "likewise" conveyance provision in the only way that can give effect to both grants,[7] the granting clause shows that the grantors in the Stone Deed conveyed (1) the entire surface estate of the 181-acre tract and (2) one-eighth of the mineral estate in the 181-acre tract.

None of the other clauses in the deed indicate that a greater mineral estate was conveyed. The conveyance was made subject to all reservations and easements of record and to an outstanding oil, gas, and mineral lease. Generally, "the principal function of a subject-to clause in a deed is to protect a grantor against a claim for breach of warranty when some mineral" or other interest is outstanding. *Wenske*, 521 S.W.3d at 796 (citing *Walker v. Foss*, 930 S.W.2d 701, 706 (Tex. App.—San Antonio 1996, no writ)). There is nothing in the deed that indicates that its subject-to clauses served any other function or in any way affected the estate being conveyed.

Merritt and NETX point to language in the warranty/habendum clause stating—"TO HAVE AND TO HOLD the above described premises, together with all and singular the right

---

[7] *See Piranha Partners*, 596 S.W.3d at 744 (directing courts to consider entire text and harmonize to extent possible).

11

and appurtenances thereto to anywise belonging unto"—and assert that this language shows that a fee simple estate was conveyed, citing *City of Stamford v. King*, 144 S.W.2d 923, 928–29 (Tex. App.—Eastland 1940, writ ref'd). However, *City of Stamford* does not hold that the insertion of this language indicates that a fee simple estate was intended to be conveyed. Rather, the Eastland Court of Appeals analyzed the four corners of the deed and all its clauses, determined that a fee simple conveyance was made, and noted, *inter alia*, that the habendum clause supported its determination. *City of Stamford v. King*, 144 S.W.2d 923, 928–29 (Tex. App.—Eastland 1940, writ ref'd).

In the Stone Deed, the phrase "together with all and singular the right and appurtenances thereto to anywise belonging unto" modifies "the above described premises," which in turn refers to the estate that was conveyed in the granting clause, i.e., the surface estate and one-eighth of the mineral estate of the 181-acre tract. Consequently, the warranty/habendum clause in this case affirms that the Stones received all rights and appurtenances belonging to them as the owners of the surface estate and one-eighth of the mineral estate of the 181-acre tract but does not support an argument that a fee simple estate was conveyed.

Further, Merritt's and NETX's contention that the Stones received all of the mineral estate would not give effect to the provision in the Stone Deed that stated that the conveyance included one-eighth of the oil, gas, and other minerals. Rather, they characterize this provision as an "extra" statement and suggest that it was an attempt to limit the warranty in the deed, citing *Ladd*, 344 S.W.2d at 479. However, in *Ladd*, the deed provided:

> 'It is agreed and understood that a one-fourth mineral interest has been heretofore sold and it is further understood and agreed that a one-fourth mineral interest in

12

said land together with the right of ingress and egress thereon, is reserved to the grantors, their heirs and assigns, and is excepted from this grant.

'It is the intention of this instrument to convey the vendee a one-half mineral interest, together with all surface rights.

*Id.* at 477–78. However, the one-fourth mineral interest, although outstanding at the execution of the deed, was an interest for a term of years that expired about ten years later. *Id.* at 478. The question was whether the one-fourth mineral interest reverted to the grantor of the deed or the grantee. *Id.* Because the deed contained no language indicating that the grantor reserved the reversionary interest, the court of appeals held that the one-fourth interest reverted to the grantee. *Id.* at 478–79. Since the one-fourth interest for a term of years was outstanding at the time of the conveyance, the court interpreted the second paragraph purporting to convey a one-half mineral interest to be a limitation on the grantor's warranty. *Id.* at 479.

In this case, unlike *Ladd*, there were no previously conveyed mineral interests when the Stone Deed was executed. Consequently, there was no reason for the grantors to attempt to limit their warranty, and the provision conveying a one-eighth mineral interest cannot reasonably be construed as an attempted limitation on their warranty.

Considering the four corners of the Stone Deed, we find that it unambiguously conveyed the surface estate and one-eighth of the mineral estate in the 181-acre tract to the Stones. Our construction of the deed harmonizes all parts of the deed, gives effect to every clause, and gives

13

the Stones the greatest estate permissible under the language of the deed.[8] *See Piranha Partners*,

596 S.W.3d at 747; *Luckel*, 819 S.W.2d at 462.

---

[8]In their brief, the Dawson Parties contend that the disputed language in the deed considered in *Hunsaker v. Brown Distribution Co.* is analogous to the language in the Stone Deed and urge this Court to follow the analysis and guiding principles of interpretation of the San Antonio Court of Appeals. *See Hunsaker*, 373 S.W.3d 153 (Tex. App.—San Antonio 2012, pet. denied). Merritt and NETX seek to discredit the authority of the *Hunsaker* opinion and point out the differences between the language in the Stone Deed and the deed considered in that case. While we agree that the San Antonio court's analysis and the guiding principles it used in *Hunsaker* support our determination in this case, we also agree that there are significant factual differences between the language in the deed considered in that case and the language in the Stone Deed. For example, the deed in *Hunsaker* contained specific reservations of mineral interests that had been previously conveyed and a conveyance of a portion of the mineral interests "*now owned by Grantor*," both of which necessarily affected the appellate court's analysis and the rules that were applicable to that analysis. *Id.* at 157–58. In this case, since there had been no prior mineral conveyances and the conveyance involved a portion of all the mineral estate, the analysis of what was conveyed is more straightforward. For that reason, we base our decision on applicable precedent from the Texas Supreme Court.

Merritt and NETX also contend that we should follow the reasoning and rules of construction used by the Eastland Court of Appeals in *Rahlek*. *See Rahlek Ltd. v. Wells*, 587 S.W.3d 57, 65–68 (Tex. App.—Eastland 2019, pet. denied). However, the deed considered in *Rahlek* contained a reservation of all current oil and gas production by the grantor and an additional clause purporting to convey a one-eighth interest of mineral and royalty on all new production to the grantee. *Id.* at 65. Because the deed contained a reservation of a mineral interest by the grantor, the court of appeals relied on the rules of construction governing reservations. *See id.* at 67 ("More importantly, to read the specific conveyance as granting a lesser estate (that is, a fractional one-eighth (1/8) of the collective one-quarter (1/4) interest rather than a conveyance of each grantors' entire one-eighth (1/8) fractional interest) would, in effect, allow the grantors to make a reservation by implication."). As we have previously discussed, the Stone Deed contains no language attempting to reserve or except anything from the interest granted. That being the case, the rules governing reservations do not apply. *See Piranha Partners*, 596 S.W.3d at 748.

14

## V. Conclusion

For the reasons stated, we reverse the trial court's judgment and enter judgment that Kathryn M. Dawson and Michael Ray Hill, as the successors-in-interest to Jamie T. Dawson and James E. Hill, jointly own an undivided seven-eighths (7/8) interest in the mineral estate in and under the 181-acre tract, subject to any outstanding oil, gas, and mineral leases executed by them, and that Thomas C. Merritt, trustee, as successor-in-interest to John L. and Treba Juanita Stone, owns the entire surface estate and an undivided one-eighth interest in the mineral estate in and under the 181-acre tract, subject to any outstanding oil, gas, and mineral lease executed by him.

Ralph K. Burgess
Justice

Date Submitted:    April 15, 2021
Date Decided:     August 13, 2021

15